# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **METKEL ALANA,** | ) | CASE NO. 7:18CV00420 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| **OFFICER ROSE, ET AL.,** | ) | By: Hon. Glen E. Conrad |
| | ) | Senior United States District Judge |
| Defendants. | ) | |

Metkel Alana, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendant prison officials shot him on two occasions, causing injuries. Three of the defendants, Officers Rose, J. Turner, and T. Meade, have answered his complaint. Defendant Clarke has filed a motion to dismiss, and Alana has responded by submitting an affidavit that the court will construe and grant as a motion to amend the complaint. After review of the record, the court concludes that the motion to dismiss must granted.

I.

Virginia Department of Corrections ("VDOC") Operating Procedure ("OP") 420.1,[1] titled Use of Force, describes several categories of nonlethal force devices and the circumstances under which correctional officers may use them to encourage compliance with orders or to quell fights or other disturbances.[2] These devices include impact weapons, impact munitions, and a 40 mm gas gun. OP 420.1(G)-(I), ECF No. 59-1. Impact weapons and munitions may be used "to

---

[1] The court granted Alana's motion for production of this policy in support of his claims to the extent that the defendants provided it to the court for in camera review. Therefore, the court considers it as part of Alana's factual support for his claims.

[2] The use of force procedure also authorizes the use of lethal force against inmates, but "only as a last resort, when there are no safe and reasonable alternatives" to prevent death or serious physical injury, the taking of hostages, or escape. OP 420.1(VI)(A). The court finds no indication that Alana is accusing officers in this case of using lethal force against him.

compel an offender to comply with direct orders when no alternative method of persuasion is effective and other types of force are not appropriate." OP 420.1(H). When "it becomes necessary" for interior gun post officers to assist in quelling an inmate "fight, assault or disturbance," the protocol stated in the OP is as follows:

   a. If feasible, sound an audible warning for all offenders to lie down and stop the unauthorized actions":

   b. If the unauthorized action continues, using the 40 mm launcher, aim at the lower extremities and fire one direct impact OC[3] round to quell the unauthorized actions.

   c. Pause.

   d. If the unauthorized action continues, using the 40 mm launcher, aim at the lower extremities and fire one direct impact OC round or exact impact sponge round.

   e. Pause and fire additional direct impact OC rounds and/or exact impact sponge rounds until unauthorized actions are under control or stopped.

OP 420.1(I)(2). The use of force operating procedure does not include a definition of fighting that must be met before nonlethal force may be used. If an inmate "poses an immediate threat of physical violence," however, officers need not await authorization from the shift commander to use impact weapons against that inmate. OP 420.1(G)(5).

Alana alleges that on May 23, 2015, at Red Onion State Prison, Defendants Turner and Meade shot Alana a total of seven times because he is an African American Muslim. Alana does not describe the type of projectile these officers fired at him or the circumstances that led to this event. He allegedly suffered several injuries above the waist, including a broken tooth. Alana also alleges that on June 17, 2016, Defendant Rose shot him because he is an African American Muslim. Again, Alana does not describe the type of projectile that struck him or the surrounding

---

[3] OC spray is a chemical agent similar to what is commonly known as pepper spray or mace and irritates a person's eyes, throat, and nose. See, e.g., Park v. Shiflett, 250 F.3d 843, 849 (4th Cir. 2001) (describing the physiological effects of OC spray).

2

circumstances, but he alleges that he suffered injuries to his leg and buttock and a broken nose. After each of these incidents, Alana was charged with a disciplinary offense for fighting. Alana Aff. ¶¶ 7-8, ECF No. 43.

In addition, Alana alleges that Defendant Harold Clarke, Director of the Virginia Department of Corrections ("VDOC"), "is in default of the duty to enforce and oversee enforcement [of the] 8th Amend[ment]. Protections allowing measures to encourage officers to shoot prisoners capriciously curtailing rights against wanton inflictions of pain causing & contributing to my injuries." Compl. 4, ECF No. 1. More specifically, Alana argues as follows: that Clarke has a statutory duty to supervise and manage correctional facilities and personnel; that the VDOC use of force policy is "either established . . . or sanction[ed] by" Clarke; that Turner, Meade, and Rose were acting as Clarke's agents who assert that their actions "were in accord with policy and procedure" because Alana was "fighting"; and that the disciplinary charges these officers brought against Alana for fighting did not state "any articulatable facts depicting that [he] was actually fighting." Alana Aff. ¶¶ 6-8, ECF No. 43.

Based on these allegations, Alana contends that the procedures "sanctioned by Harold Clarke, effectively provide[ ] his employees/agents the ability to use 'fighting' as a pretext, without any facts depicting so, to utilize force with no impugnment, at their caprice."[4] Id. at ¶ 9. Liberally construed, Alana's submissions assert a claim that the use of force policy "provides by devise, an official basis for [VDOC officers] to abuse prisoners and their right to bodily security unchecked." Id. at ¶ 10. As relief, Alana seeks monetary damages.

---

[4] Alana also complains that the VDOC disciplinary procedures do not include a definition of fighting. He does not, however, assert a claim that these defendants conducted the disciplinary proceedings or made the findings that he was guilty of the charges for fighting.

3

II.

Rule 12(b)(6) permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678.

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013). To state a claim under § 1983, the plaintiff must show direct personal involvement by each defendant in an alleged violation of his constitutional rights. Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability in civil rights case is "personal, based upon each defendant's own constitutional violations"). In this case, Alana has met the personal involvement requirement as to defendants Meade, Rose, and Turner, by alleging that each of them shot him, causing injuries, in violation of his Eighth Amendment rights.

Alana also attempts to hold Director Clarke liable for the violations committed by these subordinates. Vicarious liability for supervisory officials, known as respondeat superior, does not apply in § 1983 cases. See, e.g., Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (finding that under § 1983, "liability will only lie where it is affirmatively shown that the official

4

charged acted personally in the deprivation of the plaintiff['s] rights"). As such, Clarke cannot be held liable for the other defendants' actions merely because they work for the VDOC and he is its director. Id.

Alana also argues that Clarke is subject to supervisory liability for the use of force policy that these employees claim they followed.

> [T]he theory of supervisory liability arises from the obligation of a supervisory law officer to insure that his subordinates act within the law. Although such a supervisor may not prevent all illegal acts by his subordinates, he is obligated, when on notice of a subordinate's tendency to act outside the law, to take steps to prevent such activity. If a supervisory law officer is deliberately indifferent to that responsibility, he then bears some culpability for illegal conduct by his subordinates.

Randall v. Prince George's Cty., Md., 302 F.3d 188, 203 (4th Cir. 2002) (citing Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994)). To succeed on such a claim under § 1983, Alana must state facts showing:

> (1) that the supervisor had actual or constructive knowledge that h[is] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and
>
> (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.
>
> Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). As to the first element, "[e]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk . . . of constitutional injury." Id. As to the second element, a plaintiff "may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." Id. (internal quotation marks omitted). Finally, as to the third element, "proof of causation may be direct . . . where the policy commands the injury of which the plaintiff

5

> complains . . . or may be supplied by the tort principle that holds a person liable for the natural consequences of his actions." Id. (internal quotation marks and alterations omitted).

Wilkins v. Montgomery, 751 F.3d 214, 226-27 (4th Cir. 2014). Alana does not state facts supporting a supervisory liability claim against Clarke regarding the use of force policy.

First, even without a definition of fighting, the procedure's terms do not support Alana's contention that it permits or invites capricious use of impact devices against inmates. Rather, the policy requires officers, if feasible, to first attempt other means of persuasion—such as an audible warning and/or direct orders to convince inmates to cease a disturbance or fight. Only when circumstances make such attempts infeasible, or these other means of persuasion prove ineffective in quelling the disturbance, are officers authorized to use impact devices. Moreover, the procedure permits use of impact weapons without a commander's authorization only against an inmate who poses an immediate risk of physical harm to others.

Second, Alana does not state facts showing how Clarke was personally involved in causing his constitutional injuries. Alana does not claim that Clarke was present during either of the incidents when Alana was shot. He also provides no facts showing that Clarke had knowledge, based on documented and widespread abuses, of a pervasive and unreasonable risk that inmates would be seriously harmed because the use of force procedure does not define fighting. The complaint mentions only the two incidents when officers shot at Alana to break up so-called fights. It does not describe how Clarke was made aware of these or other similar, past incidents. If Clarke had no notice of subordinates' tendencies to act unlawfully because of the use of force procedure, he cannot be held liable for failing to act to revise the procedure or for causing or failing to prevent the harm that Alana suffered.

For the stated reasons, the court concludes that Alana's submissions do not state any § 1983 claim against Clarke. Therefore, the court will grant Clarke's motion to dismiss, and the case shall go forward as to Alana's claims that the other defendants used excessive force against him. An appropriate order will enter herewith.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

**ENTER:** This 20th day of December, 2019.

/s/ Glen Conrad
Senior United States District Judge