**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| **METKEL ALANA,** | ) CASE NO. 7:18CV00420 |
| | ) |
| **Plaintiff,** | ) |
| v. | ) MEMORANDUM OPINION |
| | ) |
| | ) |
| **OFFICER ROSE, ET AL.,** | ) By: Hon. Glen E. Conrad |
| | ) Senior United States District Judge |
| **Defendants.** | ) |

Metkel Alana, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that prison officials shot him on two occasions, in violation of his rights under the Eighth Amendment. Alana has responded by submitting an affidavit. After review of the record, the court concludes that the remaining defendants are entitled to summary judgment.

I. BACKGROUND.

Alana's complaint alleges that on May 23, 2015, at Red Onion State Prison ("Red Onion"), Defendants Turner and Meadee shot Alana a total of seven times because he is an African American Muslim.[1] Alana allegedly suffered several injuries above the waist, including a broken tooth. Alana's complaint also alleges that on June 17, 2016, Defendant Rose shot him because he is an African American Muslim. Alana states that he suffered a broken nose and injuries to his right leg and his right buttock.[2] After each of these incidents, Alana was charged with a disciplinary offense for fighting. Alana Aff. ¶¶ 7-8, ECF No. 43. In his § 1983 action,

---

[1] Although Alana's complaint did not specify the type of projectile the defendants fired at him, it is now undisputed that they were nonlethal.

[2] Alana provides evidence that after the altercation on June 17, 2016, his resulting nose injury required several stitches and "surgery to reconstruct his nasal septum." Alana Aff. ¶¶ 9, 11, ECF No. 76.

Alana sued Turner, Meadee, Rose, and Harold Clarke, the Director of the Virginia Department of Corrections ("VDOC").

The defendants filed an answer and a partial motion to dismiss. By opinion and order entered December 20, 2019, the court granted Clarke's partial motion to dismiss. Alana v. Rose, No. 7:18CV00420, 2019 WL 7040936 (W.D. Va. Dec. 20, 2019). The court held that

> the [VDOC's use of force] procedure's terms do not support Alana's contention that it permits or invites capricious use of impact devices against inmates. Rather, the policy requires officers, if feasible, to first attempt other means of persuasion—such as an audible warning and/or direct orders to convince inmates to cease a disturbance or fight. Only when circumstances make such attempts infeasible, or these other means of persuasion prove ineffective in quelling the disturbance, are officers authorized to use impact devices. Moreover, the procedure permits use of impact weapons without a commander's authorization only against an inmate who poses an immediate risk of physical harm to others.

Alana, 2019 WL 7040936, at *3.[3]

Defendants Turner, Meadee, and Rose have filed an answer and a motion for summary judgment regarding Alana's excessive force claims against them. Turner and Meadee argue that Alana's claims against them, concerning the alleged incident on May 23, 2015, are barred by the applicable statute of limitations. Rose argues that the force he used against Alana on June 17, 2016, was reasonable as a good faith effort to restore order.

Alana has responded to the motion with an affidavit that includes new facts as well as argument. To the extent that it adds facts to existing claims, the court will construe and grant it as a motion to amend. Nevertheless, the court finds that the defendants' motion is ripe for consideration.

---

[3] Alana does not state facts showing that the other defendants had any involvement in drafting or implementing the procedures that he challenged in this claim against Director Clarke.

In his affidavit, Alana states that in response to a grievance asking why he was shot in the face on June 17, 2016, the unit manager told him only that Rose was the officer who had made the shot. Alana further states:

> On June 17, 2016, G. Hines attempted to deprive me of my opportunity to use the pod phone for the prisoners. At the time I had a family crisis going on. Ultimately, we squared off.
>
> While G. Hines was grappling my waist, we were standing in front of the control booth. I was not aware of what was going on in the pod[;] my mind and focus was on trying to wrestle free [of] his grasp and my self[-]preservation. Then I was struck suddenly in my right buttock.
>
> Inexplicably, I found myself within G. Hines' grapple, both arms around my mid-section, on top of me on the staircase. . . . [T]hen I am struck on my right thigh, and the[n] suddenly I was struck on the nose while trying to wrestle out of Hines' grasp.
>
> I was sprayed in the face with O.C. spray and Hines was pulled off of me.
>
> . . . .
>
> Rose shot me in my face because of the stigma put on me by his colleagues because I am an African American Muslim. . . .
>
> . . . . [Rose] shot me in my face while I was being held and restrained by G. Hines, and vulnerable, to harm me.

Alana Aff. ¶¶ 5-8, 12-13, ECF No. 76.

## II. STANDARD OF REVIEW.

The standard for review on summary judgment is well-settled. The court should grant summary judgment only when the pleadings and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A genuine dispute of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477

3

U.S. at 248.  On summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion.  Id. at 255.  To be successful, the moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky., 93 F.3d 230, 233 (6th Cir. 1996).

When a motion for summary judgment is made and is properly supported by affidavits, the nonmoving party may not rest on the mere allegations or denials of the pleadings.  Anderson, 477 U.S. at 256.  Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side.  Id. at 256-57.  Where the plaintiff's version of events is so utterly discredited by unchallenged video footage that no reasonable jury could believe him, summary judgment is appropriate.  See Scott v. Harris, 550 U.S. 372, 380-381 (2007) ("The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape."); accord Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008) ("[W]here, as here, the record contains an unchallenged videotape capturing the events in question, we must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape.").

III. DISCUSSION.

A. The Incident on May 23, 2015.

Alana presents his federal constitutional claims under § 1983, a statute that permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights.  Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013). Because Congress has not set time limits for filing a § 1983 action, such cases are governed by

the statute of limitations applicable to general personal injury actions in the state where the wrongful conduct allegedly occurred. See Owens v. Okure, 488 U.S. 235, 250 (1989).

In Virginia, the limitation period for general personal injury claims is two years. See Va. Code Ann. § 8.01-243(A). Thus, Alana had two years from the date when his § 1983 claims accrued to file them in a federal lawsuit. A Soc'y Without A Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011). It is well established that "a cause of action [under § 1983] accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995).[4] In other words, the cause of action accrues when the plaintiff is "armed with the facts about the harm done to him, [and] can protect himself" by investigating them further and working diligently to prepare his legal claims for litigation within the statutory filing period. United States v. Kubrick, 444 U.S. 111, 123 (1979).

From Alana's evidence, it is clear that his § 1983 claims arising from the incident on May 23, 2015, accrued on that date, when he knew the harm allegedly done to him. At that point, he had a duty to inquire into any other factual or legal details necessary to bring his lawsuit within the limitation period. Alana did not file his lawsuit, however, until June 15, 2018, at the earliest, three years after the May 2015 incident at issue.[5] Thus, unless he demonstrates some reason for tolling the limitation period, his § 1983 claims based on that incident are barred under § 8.01-243(A).

---

[4] The court has omitted internal quotation marks, alterations, and citation(s) here and throughout this memorandum opinion, unless otherwise noted.

[5] See Lewis v. Richmond City Police Dep't, 947 F.2d 733 (4th Cir. 1991) (finding that civil complaint of incarcerated pro se litigant must be considered "filed" within meaning of civil procedure rules when prisoner delivered complaint to prison authorities for mailing to clerk of the district court).

When considering the timeliness of a § 1983 claim, a federal court must follow any state rules that toll the running of the applicable limitation period, "unless doing so defeats either § 1983's chief goals of compensation and deterrence or its subsidiary goals of uniformity and federalism." Battle v. Ledford, 912 F.3d 708, 713 (4th Cir. 2019). None of Virginia's statutory reasons to toll the limitation period apply to Alana's circumstances. See Va. Code Ann. § 8.01-229(A)-(K).

In response to the defendants' time-bar argument, Alana states that he initially prepared a § 1983 complaint against Turner and Meade in April of 2017. See Alana Aff. ¶ 14, ECF No. 6. He asserts that he placed a copy of this 2017 complaint "in the possession of Red Onion officials to be mailed to the [court] in April 2017. It was taken by officials along with grievance documents and never returned to [Alana] or sent out." Id.

Alana is apparently attempting to invoke the doctrine of equitable tolling, as courts frequently do in habeas corpus proceedings that challenge state convictions. Battle, 912 F.3d at 714. "Under Virginia law, equitable estoppel provides the only arguable exception to the Commonwealth's general rule against recogniz[ing] any non-statutory basis for tolling limitations." Id. To warrant the invocation of equitable estoppel under Virginia law, Alana must prove that he "was misled to his injury by the defendant in a way that prevented timely filing." Id. At the most, Alana alleges that prison officials (not the defendants in this case) failed to post his § 1983 complaint to the court after he delivered it to them in 2017. Even if true, these allegations do not show that officials' actions prevented Alana from timely filing his § 1983 complaint. He had ample time to contact the court to verify its receipt or nonreceipt of his complaint and to post a new copy to the court well within the limitation period. Alana also cites no reason that he failed to prepare his complaint on the 2015 claims much sooner after the events

at issue, to avoid any limitation issue from arising. Accordingly, Alana cannot invoke the doctrine of equitable estoppel under Virginia law to render his claims about the 2015 incident timely filed.

The court also cannot find that enforcing the state limitation rules in this case "defeat[ ] either § 1983's chief goals of compensation and deterrence or its subsidiary goals of uniformity and federalism." Id. at 714. Alana simply has shown no reason that he could not have filed well within the two-year filing period to fulfill all of the stated § 1983 goals.[6] The court will grant the defendants' motion for summary judgment as to all claims concerning the 2015 incident on the ground that they are barred by the statute of limitations.

### B.  The Incident on June 17, 2016.

1. Defendant Rose's Evidence.

In support of the summary judgment motion, Rose offers the following evidence about the incident on June 17, 2016.[7] Alana, who was assigned to the A-1 housing unit ("A1-pod") at Red Onion, became involved in an altercation with another inmate, Gregory Hines, at about 7:25 p.m. during in-pod recreation. Rose, stationed in the control booth overseeing A1-pod, saw the fight start and "gave both offenders an audible warning to stop fighting," by pressing the buzzer inside the control booth. Mem. Supp. Mot. Summ. J. Rose Aff. ¶ 4, ECF No. 65-1. Rose gave multiple verbal orders for Alana and Hines to stop fighting and lie down. Other inmates in the

---

[6] Alana has made no claim that the limitation period should be tolled during the time when he was exhausting administrative remedies, as did the plaintiff in Battle. Id. at 712 (plaintiff claimed two-year limitation period should be extended 83 days, the amount of time he spent exhausting administrative remedies). The court notes that tolling the limitation period in this case for 83 days would not render Alana's claims timely filed.

[7] The defendants' evidence consists of the following: the affidavit of Defendant K. Rose, Correctional Officer at Red Onion, with incident reports and disciplinary reports attached, and a compact disk of RapidEye surveillance camera video footage of the incident at issue. Although footage from three surveillance cameras was retained and provided in support of the defendants' motion, the A1-Pod-Right camera view provides the most useful information. Portions of this footage are cited in the opinion by the approximate time stamp(s). Except as otherwise noted, Alana does not dispute the sequence of events described in Rose's affidavit and depicted on the video footage.

area complied with that order, A1-Pod-Right video at 7:23:47-55, but Alana and Hines continued their struggle. The video clips do not show any officer inside A1-Pod during this time. Rose "fired one [OC] round[8] from a 40mm single-launcher, aiming near the offenders' lower extremities, and again ordered them to stop fighting and lie on the ground." Rose Aff. at ¶ 7; A1-Pod-Right video at 7:23:55. Hines and Alana continued tussling. Hines pushed Alana over to a staircase and held him down against the stairs, while Alana attempted to fight back. Rose states that he "then fired six impact rounds from the 40mm multi-launcher, aiming near the offenders' lower extremities.[9] [He] paused between each round to give the offenders an opportunity to comply with orders. They continued to disregard all orders given." Rose Aff. at ¶ 8; A1-Pod-Right video at 7:23:55-7:24:12.

The first officer to appear on the video, reporting to assist in quelling the fight in A1-Pod, is K-9 Officer Addington with his patrol dog. A1-Pod-Right video 7:24:14. The evidence is that Addington verbally ordered Alana and Hines to stop fighting. When they did not comply, Addington tried to employ his K-9 to intervene and stop the fight. The K-9 engaged on Hines' leg, but then let go. Addington could not persuade the K-9 to reengage. See gen. A1-Pod-Right video 7:24:14-57. When Officer Bryant and another officer arrived on the scene several seconds later, Bryant ordered the combatants to separate and stop fighting. They failed to comply, so Bryant applied a one-half to one-second burst of OC spray, which struck both inmates in the face. See A1-Pod-Right video 7:24:57. Within seconds after the direct application of the OC spray, Addington was able to pull Hines off of Alana, and both inmates lay face down on the floor.

---

[8] OC spray is a chemical agent similar to what is commonly known as pepper spray or mace, that irritates a person's eyes, throat, and nose. See, e.g., Park v. Shiflett, 250 F.3d 843, 849 (4th Cir. 2001) (describing the physiological effects of OC spray).

[9] As discussed later, Alana disputes that Rose aimed all his shots at the inmates' lower extremities.

Officers escorted the inmates to the showers for decontamination of OC spray and then to the medical unit for evaluation. Based on these events, Alana was charged and found guilty of a disciplinary infraction for fighting. During the inmates' fight, an impact round struck Hines in the head, and Alana sustained a suspected broken nose."[10] Rose Aff. at ¶ 13. Rose denies that he was aiming for either of the inmates' heads when he fired the impact rounds.

2. The Eighth Amendment Claim.

It is well established that only "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Hudson v. McMillian, 503 U.S. 1, 5 (1992). On the other hand, not every malevolent touch by a prison guard amounts to a deprivation of constitutional rights. Id. at 9. Where officers apply force in a good faith effort to restore order and discipline, there is no excessive force. Id. at 6-7. Courts recognize that corrections officials must act "in haste, under pressure, and frequently without the luxury of a second chance." Whitley v. Albers, 475 U.S. 312, 321 (1986). Consequently, this court must give prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Hudson, 503 U.S. at 7.

In this context, the court must inquire whether the official, subjectively, applied force "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm" and whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Id. at 6, 8. The subjective inquiry considers "the need for application of force, the relationship between that need and the amount of force used, the threat

---

[10] Nurse Mullins evaluated Alana after the fight. Mullins noted, "Bridge of nose-open skin and actively bleeding. Possible broken nose, abrasion on upper right leg due to dog bite, due to altercation with another offender. Treatment rendered: cleaned nose laceration with normal saline. Applied 2x2 and wrapped with kling (to nose). Transferred to Dickenson County Medical Center by Security for assessment." Rose Aff. Encl. A., at 2, ECF No. 65-1.

reasonably perceived by the responsible official[ ], and any efforts made to temper the severity of a forceful response." Id. at 7. To prove the objective component of his excessive force claim, Alana must show more than "de minimis uses of physical force" by the defendant. Id. at 10. In short, in considering an excessive force claim, the "core judicial inquiry [is] . . . the nature of the force—specifically, whether it was nontrivial and was applied maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 39 (2010).

In response to Rose's motion, Alana states that after he and Hines started fighting, he was focused on surviving and not on other occurrences in the pod. The video footage clearly demonstrates, however, that the other inmates in the pod heard and responded to the warning buzzer and verbal orders by lying down on the ground, and Alana does not dispute the evidence that Rose gave verbal warnings before firing any rounds. Alana also argues that Rose's shots which struck his right buttock and right thigh demonstrate Rose's ability to aim at the lower extremities and prove that Rose intentionally aimed one shot at Alana's face, to harm him rather than to restore order. Rose denies that he aimed any shots at the inmate's heads or faces. These contrasting versions of events might, ordinarily, present genuine issues of material fact as to the excessive force claim, so as to preclude summary judgment and require a trial.

In this case, however, the defendants argue that surveillance camera footage of the incident clearly shows that Rose's uses of force were reasonable under the circumstances. The court agrees. Moreover, Alana has signed a sworn statement indicating that he has viewed the video footage. He raises no challenge to its accuracy.

The video footage clearly depicts the inmates fighting—squaring off against each other and actively engaging in battle in the first several seconds of the incident. A puff of OC spray is visible on the video after Rose's OC round strikes at the inmates' feet, but they continue their

physical engagement. The video then shows Hines corner Alana on the stairs and remain on top of him while the struggle continues. Rose could reasonably have believed that Hines' apparent advantage over Alana warranted an escalation of force—by using the impact rounds to convince Hines to stop assaulting Alana. Moreover, the footage shows Hines and Alana continuing to wrestle with each other despite all the escalating uses of force—from the verbal orders and the OC round, throughout the application of all six impact rounds, and despite the use of the canine. On this evidence, the court concludes that no reasonable fact finder could hold that Rose did not reasonably perceive a need for the types of force he used before other officers reported to the scene to assist, or that he failed to attempt less severe force (verbal orders, OC spray) before escalating to impact rounds. See McMillian, 503 U.S. at 7.

The footage does not clearly depict when Rose fires the impact rounds or where they strike. Thus, the video alone does not disprove Alana's assertion that Rose purposely aimed at least two of the impact rounds at the inmates' heads. Rose's affidavit, however, based on his personal knowledge of his own actions, states that he aimed all shots at the inmates' lower extremities. The evidence also reflects that no other officer was in the pod to attempt lesser forms of force to stop the fight during the critical period after Hines trapped Alana on the staircase. Contrary to Alana's contentions, the varied body parts allegedly struck by the impact rounds do not prove where Rose aimed his shots. Alana presents no other evidence based on personal knowledge that Rose had any reason to wish him harm or intended to cause him harm. Alana's mere speculation that Rose intentionally fired rounds at the inmates' heads is simply not entitled to a presumption of truth so as to survive summary judgment. See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir.1995) ("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."),

11

Similarly, Alana provides no evidence that the injury to his nose was actually caused by an impact round, rather than by a blow from Hines' fist or contact with another surface during the struggle, such as a staircase or railing. Even if Alana could show that an impact round struck his nose, the court concludes that no reasonable jury could find from the evidence in the record that Rose used force with the intention of causing Alana harm,[11] rather than using force in a good faith effort to stop Hines from harming Alana and to restore order and security for all inmates in the pod. Based on the foregoing, the court concludes that no reasonable jury could find that Rose used excessive force in violation of the Eighth Amendment.

3. The Race and Religion Issues.

"A claim of racial discrimination is a grievous charge, which certainly can rise to constitutional dimensions; but absent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated." Chapman v. Reynolds, 378 F. Supp. 1137, 1140 (W.D. Va. 1974). Alana simply offers nothing more than conclusory assertions that Rose acted as he did because of Alana's race and/or religion. The record is devoid of evidence that Rose harbored any animus against Alana, based on his race or his religion, or that Rose fired OC and impact rounds at Alana and his assailant for any reason other than to persuade the combatants to stop fighting. Therefore, the court will grant the defendants' motion for summary judgment as to Alana's claims against Rose.[12]

---

[11] Equally likely explanations for such an occurrence include the inmates' unexpected movements, ricochet of the round, or purely accidental failure to aim accurately in the heat of the moment, none of which qualifies as a malicious act.

[12] As Rose is entitled to summary judgment on the merits of the Eighth Amendment claim, the court declines to address his additional defense of qualified immunity.

### III. CONCLUSION.

For the reasons stated, the court will grant the defendants' motion for summary judgment. An appropriate order will enter herewith.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel for the defendants.

**ENTER**: This __8th__ day of June, 2020.

*/s/ Glen Conrad*

Senior United States District Judge